MDME. EDMA G. V. TROUSSEAU *v.* B. CARTWRIGHT
and H. E. McINTYRE, Executors of the Will of G. P.
Trousseau, deceased.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED DEC. 24, 1896.          DECIDED FEBRUARY 6, 1897.

JUDD, C.J., FREAR, J., AND E. P. DOLE, ESQ., OF THE BAR, IN
PLACE OF WHITING, J., DISQUALIFIED.

Though the defendants admitted that a will had been admitted to pro-
  bate, and that they were the executors of the testator, it was proper
  to allow the plaintiff to introduce the will, as it was a statement by
  the testator of his financial condition—a material fact in issue.
The order of proof is largely in the discretion of the party offering the
  evidence.
The competency of an expert in a foreign language is a matter within the
  discretion of the court.
A written agreement becomes evidence on proof of its execution by the
  party whose legal representatives are sought to be charged.
A witness who testifies to admissions of a party to an agreement may
  state the length and character of his acquaintance with said party.
A letter of the testator remitting a payment in pursuance of the agree-
  ment in question is evidence tending to show his admission of his
  obligations thereunder.
A foreign code of law may be introduced as a whole and thereafter
  specific portions of it, applicable, pointed out.
Admissions of the testator, confirming expressions in the agreement as
  to his relations with the other party to the agreement, are compe-
  tent evidence.

Oral admissions by a party to an agreement as to its existence and effect
    are competent evidence, without introducing the agreement, as what
    a party admits against himself may reasonably be taken to be true.
It was sufficient for this case that by Hawaiian law a separated wife
    could make an agreement with her husband.

### OPINION OF THE COURT BY JUDD, C.J.

The previous proceedings in this case are reported *ante*,
pages 138 and 352. A new trial having been ordered, Judge
Carter of the Circuit Court, First Circuit, heard the case, jury
waived, and rendered a decision therein in October last, order-
ing judgment for the plaintiff in the sum of $29,968.88, of
which $1000 was remitted by plaintiff as being covered by the
judgment on the previous trial; and the case comes to us upon
the defendants' bill of exceptions. The exceptions taken are
numerous and we copy them entire and have renumbered them
for convenience, as follows:

"Be it remembered that this cause came on to be heard on
the 16th day of October, A. D. 1896, in vacation as of the
August term, A. D. 1896, of the Circuit Court, First Circuit,
before Alfred W. Carter, presiding judge, when the plaintiff
to maintain the issue on her part offered in evidence,—Petition
for probate of will, Order of probate, Order of notice of hear-
ing of petition for probate of will, Copy of will, all in original
probate record No. 2899 (marked Exhibit A), to the admission
of which testimony the defendants by their counsel, after ad-
mitting in open court that the will of Dr. Trousseau had been
probated and that Bruce Cartwright and Hugh E. McIntyre
had been appointed executors of his estate, then and there duly
objected on the ground—

1—That said evidence was immaterial, irrelevant and incom-
petent, and had a bearing on other facts and matters of which
in itself it was no proof.

The court overruled the objections and admitted the evidence,
to which ruling and admission of evidence, the defendants by

their counsel then and there duly excepted and the exception was allowed by the court.

2—And the plantiff further to maintain the issue on her part offered in evidence and read the deposition of Mr. Vizzavona (Exhibit E).

To the admission of the third interrogatory therein—"Are you familiar with the handwriting of the late Dr. George Trousseau? If you are, will you say whether the annexed agreement bears his signature?" and the answer—"I am familiar with the late Dr. G. Trousseau's signature; the signature on the annexed agreement is that of Dr. G. Trousseau." Defendants by their counsel objected on the ground that it was necessary to prove the capacity of Dr. Trousseau and wife to make a contract before proving his signature, and that the evidence was irrelevant, incompetent and immaterial.

The court overruled the objections and admitted the evidence to which ruling and admission of evidence, the defendants by their counsel then and there duly excepted and the exception was allowed by the court.

3—To the fifth interrogatory, "Can you state whether or not it is the French custom to use the words 'epouse separee' appearing in said agreement, in reference to a wife who lives separate from her husband by private agreement of separation, or are the words 'epouse separee' used only to indicate a wife separated by judicial decree?" and to the admission of the answer "The words 'epouse separee' form a legal phrase (lit. are legal words) and mean a wife separated by judicial decree (lit. judgment); a copy of the decree of separation is deposited in my office." The defendants by their counsel objected on the grounds that the witness had not been shown to be an expert on legal phraseology; that if the words "epouse separee" are ordinary words the admitted translation of Pierre Jones was conclusive as to their meaning; that the meaning of the words "epouse separee" was immaterial, irrelevant and incompetent; that the evidence did not tend to prove capacity of the parties

to the agreement sued upon; that the recital of which it was a part in the contract was not proper and competent evidence of a valid decree of separation between Dr. and Mrs. Trousseau and of their status.

The court overruled the objections and admitted the evidence, to which ruling and admission of evidence the defendants by their counsel then and there duly excepted and the exception was allowed by the court.

4—And the plaintiff further to maintain the issue on her part offered in evidence the original agreement attached to the aforesaid deposition and referred to in interrogatory three.

To the admission of this agreement defendants by their counsel objected on the ground that Mrs. Trousseau's signature had not been proved, that as husband and wife Dr. and Mrs. Trousseau were incapable of entering into any contract and their capacity had not been shown.

The court overruled the objection and admitted the evidence, to which ruling and admission of evidence the defendants by their counsel then and there duly excepted and the exception was allowed by the court.

5—And the plaintiff further to maintain the issue on her part called as a witness A. S. Hartwell who, *inter alia*, testified as follows: "I was well acquainted with the late Dr. George Trousseau; he was my family physician from about 1872 until he went to Hawaii, some ten years later; I was retained in behalf of Mme. Trousseau by the French Consul to bring proceedings against him to enforce payment of the French decree referred to in the agreement."

To this testimony the defendants by their counsel objected as incompetent, irrelevant and immaterial.

The court overruled the objection and admitted the testimony, to which ruling and admission of testimony defendants by their counsel then and there duly excepted and the exception was allowed by the court.

6—And on October 17th, to which day the court had ad-

journed, the plaintiff further to maintain the issue on her behalf offered in evidence a letter of G. Trousseau dated December 30, 1891, (Exhibit L).

To the admission of this evidence the defendants by their counsel then and there objected as incompetent, irrelevant and immaterial.

The court overruled the objection and admitted the evidence, to which ruling and admission of evidence the defendants by their counsel then and there duly excepted and the exception was allowed by the court.

7—And the plaintiff further to maintain the issue on her behalf called as a witness Mons. Vizzavona, who testified, *inter alia*, as follows: Ques. "This is what?" (showing book to witness). Ans. "This is a copy of the Code Napoleon."

To the allowance of this question and the admission of the answer defendants by their counsel then and there objected on the grounds that the admission of the Code Napoleon as a whole was not the proper way to prove a French law, and that the evidence was incompetent, irrelevant and immaterial.

Counsel for plaintiff offered to point out specific portions relied on and later did do so.

The court overruled the objection and allowed the question and admitted the answer, to which ruling and admission of testimony the defendants by their counsel then and there excepted and the exception was allowed by the court.

8—The said witness was also asked this question: "At any time during your acquaintance with Dr. Trousseau did he refer in any matter to the relations between himself and Mme. Trousseau?"

To this question defendants by their counsel objected as irrelevant and immaterial.

The court overruled the objection on the ground that the evidence was admissible to confirm the declaration in the contract that such a relation existed and allowed the question, to

which ruling the defendants by their counsel then and there duly excepted and the exception was allowed by the court.

9—The said witness then answered said question as follows: "Yes, sir, he told me that he was separated *de corps et de biens*, that is the words that we said in French when you are separated from your wife. There is another phrase that we employ when you leave your wife, but when they are separated by the judiciary they use *'epouse separee de corps et de biens'*, and that is what Dr. Trousseau told me."

Defendants by their counsel then and there moved to have said answer stricken out as incompetent, irrelevant and immaterial.

The court overruled the objection and admitted the evidence, to which ruling and admission of evidence the defendants by their counsel then and there duly excepted and the exception was allowed by the court.

10—And the plaintiff further to maintain the issue on her behalf offered in evidence the copy of the Code Napoleon referred to in the testimony of Mons. Vizzavona.

To the admission of this evidence the defendants by their counsel then and there objected on the ground that the French law could be proved only by witnesses skilled therein, and the offering in bulk of the Code Napoleon in the original language without reference to any specific parts thereof was improper, and that the evidence was incompetent, irrelevant and immaterial.

The court overruled the objection and admitted the evidence, to which ruling and admission of evidence the defendants by their counsel then and there excepted and the exception was allowed by the court.

When plaintiff had closed her testimony and rested her case, defendants by their counsel moved for judgment upon the following grounds:

11—That there was no proof that Madame Trousseau was separated from Dr. Trousseau by judicial decree.

12—That there was no proof that the laws of France are the same as Hawaiian law as to separation of husband and wife.

13—That the alleged contract had not been proved to have been executed.

14—That the decree of separation of Dr. and Madame Trousseau had not been proved in accordance with the Compiled Laws, page 370.

15—That no decree of separation of a Hawaiian court had been proved.

16—Incompetent testimony had been offered to prove the allegation of the complaint.

17—The French term "epouse separee" in the contract has no judicial significance in Hawaii.

18—The French term in the contract does not come within Sec. 1340 of the Civil Code.

19—The power to Antone Perry recites that she is a widow.

20—The claim is barred by the statute of limitations.

The court denied the motion for judgment to which exceptions were taken and allowed."

We overrule all of the exceptions taken and will give our reasons upon such of the points as we deem essential to discuss. Where the "agreement" is spoken of it means the agreement set out in full in the first decision in this case, *ante*, page 138.

Exception 1. Even though defendants had admitted that the will of their testator had been probated and that the defendants were executors of his estate, it was competent for plaintiff to introduce the probate proceedings and the will of Dr. Trousseau, as it contained a statement by the testator himself of his financial condition. For this purpose the will was material evidence for the plaintiff, the main fact for her to prove being the ability of Dr. Trousseau to pay the principal sum mentioned in the agreement.

Exception 2.    The order of proof is a matter of convenience and rests largely in the discretion of the party offering the evidence.    It was immaterial which was proved first, the signature of Dr.Trousseau or the capacity of the parties to make the agreement.

Exception 3.    The competency of a person to be admitted as an expert in a foreign language is a matter in the discretion of the court.    Probably the Chancelier of the French Legation, being also a French Notary, was as competent a witness as could be obtained here in reference to the meaning of French words.

Exception 4.    The agreement became evidence on the proof of Dr. Trousseau's signature thereto; his executors being the parties sought to be charged.

Exception 5.    It was proper to allow Mr. Hartwell to state the length and character of his acquaintance with Dr. Trousseau to indicate the means of knowledge of what he afterwards testified to without objection, to wit, the admission of Dr. Trousseau as to the decree of separation between himself and plaintiff, familiarity with his handwriting, &c.

Exception 6.    A letter of Dr. Trousseau to the French Commissioner dated December 30, 1891, stating that he handed him 200 pounds or 5000 francs, to be remitted to Mme. Trousseau at Paris, was competent evidence as tending to show an admission of Dr. Trousseau's as to his obligations under the agreement.

Exception 7.    Any objection to admitting the Code Napoleon as a whole, not specifying the particular portions relied upon, loses its force since at a later stage of the case the specific portions applicable were pointed out to the court.

Exception 8.    Evidence of admissions of Dr. Trousseau confirming the expressions in the agreement as to the relations of Mme. Trousseau to himself was competent.

Exception 9.    The evidence of a witness that Dr. Trousseau told him that he was separated from his wife "de corps et de

biens"was competent evidence to confirm the statement in the agreement that plaintiff was an "epouse separee."

Exception 10, is similiar to exception 7 and we make the same answer to it.

Exception 11, being point 1 upon which defendants moved for judgment. This involves the question of the weight of evidence, as there certainly was some proof that Mme. Trousseau was separated from Dr. Trousseau by judicial decree, to wit, the statement in the agreement signed by Dr. Trousseau that she was an "epouse separee" (separated wife), which was explained by a competent witness to mean a wife separated by judicial decree, and also the admissions of Dr. Trousseau. Oral admissions by a party to the agreement as to the existence of a written agreement are competent proof against him even though they involve what must necessarily be in writing. This is not proving the contents of a paper by parol, without producing the paper. The admissions stand on a different principle, that what a party admits against himself may reasonably be taken to be true. The following cases may be referred to— *Smith v. Palmer*, 6 Cush. 513; 1 Greenleaf, Ev., Secs. 96, 203; *Slatterly v. Pooles*, 6 M. & W., 663; *Loomis v. Wadhams*, 8 Gray, 562.

Exception 12. It was not essential to the case that the laws of France and of the Hawaiian Islands are the same as to the separation of husband and wife. It is sufficient that by the laws of Hawaii the separated wife could at the date of the agreement make a contract with her husband. See Sec. 1339, Civil Code, Comp. Laws, p. 440. The former decision, *ante*, page 138, settles this.

Exception 13. There was proof of the execution of the agreement.

Exception 14. In view of our opinion on exception 11, we hold it was not essential for plaintiff to produce a duly authenticated copy of the decree.

Exception 15. It was not essential to prove a separation by a Hawaiian court. The court should take cognizance of a judicial separation in a foreign court, as determining the status of the woman and her power to make the agreement.

Exception 16. We find no incompetent testimony allowed in this case, whether any was "offered" or not cuts no figure in this case.

Exception 17. The French term "epouse separee" in the agreement has the judicial significance in Hawaii that it was proved to have.

Exception 18. This point was not argued before us nor touched upon in the briefs, and we fail to see its force.

Exception 19. If in the power of attorney to Mr. Antone Perry the plaintiff is styled a "widow," her husband, Dr. Trousseau, having deceased, it does not overthrow the evidence that she was a separated wife while her husband lived.

Exception 20. Payments made by Dr. Trousseau in 1891 took the claim out of the statute of limitations, if it had run previous to that date.

The exceptions are overruled.

*A. S. Hartwell,* for plaintiff.

*C. Brown* and *L. A. Dickey,* for defendants.